## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| EXCELL HARDIMAN and | ) | |
| BELINDA HARDIMAN | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:05-CV-262-JM |
| | ) | |
| DAVITA INC., f/n/a TOTAL RENAL | ) | |
| CARE INC., d/b/a DAVITA GARY | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

This matter is before the Court on the following: (1) Motion for Partial Summary Judgment [DE 40], filed by Defendant Davita Inc., f/n/a Total Renal Care, Inc., d/b/a Davita Gary on January 16, 2007; (2) Motion to Strike Inadmissable Evidence from the Plaintiff's Response to Defendant's Motion for Partial Summary Judgment [DE 45], filed by Defendant Davita on February 13, 2007; and (3) Motion to Exclude Testimony of Plaintiffs' Expert, John Flaherty, M.D. [DE 46], filed by Defendant Davita on February 15, 2007. For the following reasons, the Court denies the Motion for Partial Summary Judgment, grants the Motion to Strike, and denies the Motion to Exclude Testimony.

### PROCEDURAL BACKGROUND

On July 5, 2005, Plaintiffs Excell and Belinda Hardiman filed a Complaint in this Court alleging that the negligence of Defendant Davita caused injuries to the Plaintiffs. More specifically, Plaintiffs essentially allege two claims: (1) they allege that Plaintiff Excell Hardiman contracted Hepatitis B through dialysis at the Defendant's facility; and (2) they allege that the Defendant failed to vaccinate Plaintiff Excell Hardiman against the virus.

On September 16, 2005, the Plaintiffs filed an Amended Complaint.  On October 7, 2005, Defendant Davita filed an Answer to the Plaintiffs' Amended Complaint.  On February 13, 2006, Defendant Davita filed a Motion for Leave to File Amended Answer and Affirmative Defenses, which the Court granted on March 7, 2006.  On March 9, 2006, Defendant Davita filed its Amended Answer.

On January 16, 2007, Defendant Davita filed a Motion for Partial Summary Judgment along with a Memorandum in Support of Defendant's Motion for Partial Summary Judgment.  On January 30, 2007, Plaintiffs filed Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment, and on February 13, 2007, Defendant Davita filed Defendant's Reply to Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment.

Also on February 13, 2007, Defendant Davita filed a Motion to Strike Inadmissible Evidence from Plaintiff's Response to Davita's Motion for Partial Summary Judgement.

On February 15, 2007, Defendant Davita filed a Motion to Exclude Testimony of Plaintiff's Expert, John Flaherty, M.D, along with a Memorandum in Support of Motion to Exclude Testimony of Plaintiffs' Expert, John Flaherty, M.D.  On March 1, 2007, Plaintiffs filed Plaintiffs' Response to Defendant's Motion to Exclude Plaintiffs' Expert, John Flaherty, M.D., and on March 8, 2007, Defendant Davita filed Defendant's Reply to Plaintiffs' Response to Motion to Exclude Testimony of John Flaherty, M.D.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**ANALYSIS**

**A.      Motion to Exclude Testimony**

In its instant Motion, Defendant Davita requests on order from the Court excluding testimony

from the Plaintiffs' expert, Dr. John Flaherty.   The Defendant proffers three arguments:  (1) Dr.

Flaherty's opinion regarding probability of causation is not the product of reliable principles or

methods and thus is not reliable; (2) Dr. Flaherty's opinion is not based on scientific, technical, or

other specialized knowledge and therefore his opinion is not relevant because it will not assist the

trier of fact; and (3) Dr. Flaherty is not qualified to render an opinion as to the cause of the

Plaintiff's claimed damages and he acknowledged as such in his deposition, in which he stated that

he would defer to the opinion of a hepatologist.   In response, the Plaintiff argues that (1) as to

relevance and reliability, Dr. Flaherty based his opinions regarding probability of causation on

reliable principles and methods and his opinion meets the requirements of Federal Rule of Evidence

702; and (2) as to his opinion and claimed damages, Dr. Flaherty's medical opinions regarding the

medical effects of hepatitis and chronic liver damage are "so mundane it defies reason that the

Defendant is asking the court to exclude this testimony."   Pls.' Resp. Def.'s Mot. Exclude Pls.'

Expert, John Flaherty, MD at 2 (hereinafter, "Pls.' Expert Resp.").

The Court will address the Defendant's three arguments in support of the exclusion of Dr.

Flaherty's testimony in turn.

**STANDARD**

The admissibility of expert evidence is governed by Federal Rule of Evidence 702 as

interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702.

The admissibility of expert testimony--whether based on "scientific," "technical," or "other specialized" knowledge--is governed by the Supreme Court's general holding in *Daubert*, which requires the district court to exercise a "gatekeeping" function to ensure that such testimony is both reliable and relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999); *see generally Daubert*, 509 U.S. at 589-92; *see also Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607 (7th Cir. 2006). The fundamental purpose of this gate-keeping requirement "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152.

In considering *Daubert* and *Kumho Tire*, the Seventh Circuit has endorsed a two-step analysis for the district courts to use in evaluating expert testimony under Rule 702: first, the court must determine whether the expert's testimony is "reliable," and second, the court must determine whether the expert's testimony is "relevant."[1] *See, e.g., United States v. Hall*, 165 F.3d 1095, 1101-02 (7th Cir. 1999); *Cummins v. Lyle Industries*, 93 F.3d 362, 367 (7th Cir.1996); *Deimer v.*

---

[1] Some courts break down the *Daubert* and Rule 702 test into a three-step analysis with the first step being a threshold inquiry regarding whether the person is "qualified as an expert by knowledge, skill, experience, training, or education." Fed.R.Evid. 702; *see also Porter v. Whitehall Laboratories, Inc.*, 791 F.Supp. 1335, 13424 (S.D. Ind. 1992). However, other courts combine the qualifications inquiry into the reliability prong of the test. Here, the Court will address the arguments as presented by the Defendant.

*Cincinnati Sub-Zero Products, Inc.*, 58 F.3d 341, 344 (7th Cir. 1995); *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614-16 (7th Cir. 1993); *accord Kumho Tire*, 526 U.S. at 141. "As with all questions of admissibility, each of these findings regarding a witness' testimony is a matter of law to be determined by the trial judge." *Porter v. Whitehall Labs, Inc.*, 791 F. Supp. 1335, 1342 (S.D. Ind. 1992), *aff'd,* 9 F.3d 607 (7th Cir. 1993).

For an expert opinion to satisfy the reliability requirement, the expert must be qualified in the relevant field and the expert's opinion must be based on sound scientific or other relevant methodology. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). The hallmark of this reliability prong is the scientific method, i.e., the generation of testable hypotheses that are then subjected to the real world crucible of experimentation, falsification/validation, and replication. *Caraker v. Sandoz Pharmaceuticals Corp.*, 188 F. Supp. 2d 1026, 1030 (S.D. Ill. 2001) (citing *Daubert*, 509 U.S. at 593). In *Daubert*, the Supreme Court set forth the familiar non-exclusive, non-dispositive checklist for trial courts to use in assessing the reliability of scientific expert testimony, including: (1) whether the opinion can be or has been tested, (2) whether the opinion has been subjected to peer review and publication, (3) any known or potential rate of error of the methodology employed, and (4) the degree of general acceptance of the opinion or its methodology within the relevant field. *Daubert*, 509 U.S. at 593-94; *see also* Fed.R.Evid. advisory committee notes (2000 Amendments). The advisory committee notes to Rule 702 provide additional factors, along with the *Daubert* list, for a court to consider, including, but not limited to, "[w]hether the expert has adequately accounted for obvious alternative explanations." Fed.R.Evid. 702 advisory committee notes (2000 Amendments) (citations omitted). In *Kumho Tire*, the Court articulated that strict adherence to the factors was not necessary; rather, the factors are examples of criteria that a

trial court may use to determine whether the expert, in offering the opinion, acted as would an expert in the field. *Kumho Tire*, 526 U.S. at 151-52. As a result, "the *Daubert* framework is a flexible one that must be adapted to the particular circumstances of the case and the type of testimony being proffered." *Mihailovich v. Laatsch*, 359 F.3d 892, 919 (7th Cir. 2004). Ultimately, the object of the court's Rule 702 reliability inquiry is to ensure that the opinions expressed by testifying experts "adhere to the same standards of intellectual rigor that are demanded in their professional work." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).

As to the relevancy requirement, the Court in *Daubert* explained that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92.  The Court further noted that "[e]xpert testimony which does not relate to an issue in the case is not relevant, and, ergo, not helpful." *Id.* at 591 (citation omitted).  In discussing the application of the "assist" requirement, the Seventh Circuit has explained that expert testimony that does not assist the trier of fact is properly excludable because "[s]uch expert testimony will not aid the jury because it addresses an issue of which the jury is already generally aware, and it will not contribute to their understanding of the particular dispute." *Hall*, 165 F.3d at 1104 (quoting *United States v. Hudson*, 884 F.2d 1016, 1023 (7th Cir. 1989)); *see also Gregory-Bey v. Hanks*, No. IP 94-903-C H/G, 2000 WL 1909642, at *21 (S.D. Ind. Nov. 29, 2000).  On the contrary, "[i]f, because of the expert's knowledge of relevant scientific relationships (facts), the expert's particular use of those relationships in the instant case will help the trier determine a fact, then the opinion is admissible under Rule 702." *Porter*, 791 F.Supp. at 1343.

Finally, the Court notes that "[a] review of caselaw [sic] after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed.R.Evid. 702 advisory

committee notes (2000 Amendments).  The District Court possesses "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152. Further, "the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Comer v. American Elec. Power*, 63 F. Supp. 2d 927, 933 (N.D. Ind. 1999) (quoting *Kumho Tire*, 526 U.S. at 142 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997)).

*1.     Relevance*

In its Motion to Exclude, the Defendant argues that Dr. Flaherty's testimony regarding the Plaintiff's contraction of hepatitis B should be excluded because the testimony is not based on scientific, technical, or other specialized knowledge.  Rather, the Defendant argues, Dr. Flaherty's opinion is based on "percentages", and that "[a] lay juror could just as easily come to the same conclusion as Dr. Flaherty based on exactly the same hypothesis as Dr. Flaherty, that because [Plaintiff Excell] Hardiman underwent dialysis more times at the Gary facility, that he acquired the disease at that facility."  Mem. Supp. Mot. Exclude Test. Pls.' Expert at 6 (hereinafter, "Mem. Supp. Exclude").

Rule 702 permits a witness to testify as an expert only where the Court determines that "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed.R.Evid. 702.  The advisory committee notes provide more detail as to the "assist" requirement:

> There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

7

> When opinions are excluded, it is because they are unhelpful and
> therefore superfluous and a waste of time.

Fed.R.Evid. 702 advisory committee notes (internal quotation and citation omitted).  A trial judge has "wide discretion" in determining the relevance of the expert's testimony on a particular subject. *Goodwin v. MTD Products, Inc.*, 232 F.3d 600, 606 (7th Cir. 2000); s*ee Daubert*, 509 U.S. at 592 (the determination under Rule 702 of whether expert testimony will "assist" is an issue for the trial judge under Rule 104(a)).

As a threshold matter, the Defendant cites no case law in support of its blanket conclusion that an expert opinion based on "percentages" will not assist the trier of fact.  Here, the Court finds that Dr. Flaherty's expert opinion would assist the trier of fact.  As discussed in more detail *infra*, Dr. Flaherty possesses "expert knowledge of relevant scientific relationships (facts)" pertinent to the instant case, in particular his expert knowledge regarding the transmission of Hepatitis B.  Based on that expert knowledge, Dr. Flaherty opines that there is a ninety-five percent chance that Plaintiff Excell Hardiman contracted Hepatitis B at Defendant's facility.  However, without his underlying expert knowledge with regard to the transmission of Hepatitis B, Dr. Flaherty would not have been able to draw his conclusion about the probable cause of Plaintiff Excell Hardiman's Hepatis B.  The Court finds that Dr. Flaherty's opinion is helpful and may aid the trier of fact.  *See Ford Motor Co.*, 215 F.3d at 718-19 (citing *Walker v. Soo Line R.R. Co.*, 208, F.3d 581, 589-90 (7th Cir. 2000) ("Where an expert's hypothetical explanation of the possible or probable causes of an event would aid the jury in its deliberations, that testimony satisfies Daubert's relevancy requirement.").

2.      *Reliability*

8

In its Motion to Exclude, the Defendant argues that Dr. Flaherty's testimony regarding the Plaintiff Excell Hardiman's contraction of hepatitis B should be excluded because the testimony is unreliable as it is not based on reliable principles and methods.  In particular, the Defendant seeks to exclude Dr. Flaherty's testimony regarding the probability that the Plaintiff contracted hepatitis B at the Defendant's Gary facility.[2]  In response, the Plaintiff argues that Dr. Flaherty based his opinions regarding the probability of causation on his expert knowledge regarding internal medicine and infectious disease and they are the product of reliable principles and methods.

"In general, for facts and data to be of a type reasonably relied upon by experts to form an opinion, there must be a connection between the currently-observed facts and some known scientific paradigm."  *Porter*, 791 F.Supp at 1343.  Therefore, the basis of an expert's opinion must have scientific support beyond the testifying expert's own hypothesis and must be founded upon some "data or established paradigm that provides the "reasonably reli[able]" reference point for the ultimate opinion." *Id.* at 1344.

In the instant case, the Court finds that Dr. Flaherty's opinion regarding the probability that the Plaintiff contracted Hepatitis B at the Defendant's facility is based upon a foundation of scientific methodologies, including known risk factors for Hepatitis B transmission, scientific appreciation of the increased risk of hepatitis contraction at dialysis facilities, and established avenues of infection at such facilities.  Thus, while the *weight* of Dr. Flaherty's opinion may be vulnerable to challenge upon cross examination, the opinion itself is based on reliable scientific methods and is therefore admissible.

---

[2]In many respects, the argument raised in the Defendant's Motion to Exclude closely resembles the arguments raised in the Defendant's Motion for Partial Summary Judgement.  Accordingly, the Court's denial of both Motions share congruent analysis and reasoning.  *See generally infra.*

Based on scientific knowledge regarding the highly contagious nature of Hepatitis B and Dr. Flaherty's own clinical experience, Dr. Flaherty testified that dialysis patients have an extraordinarily high risk of becoming infected with the disease.  See Pls.' Designated Materials Resp. Def.'s Mot. Partial Summ. J., Ex. C, at 3-6; 8-9 (Flaherty Dep. at 39:20-44:1; 46:2-47:10) (hereinafter, "Flaherty Dep.").[3]  Because of this increased rate of infection, dialysis centers, including the Defendant's facility, have imposed policies and procedures to prevent the spread of infection, such as mandatory vaccination and isolation (quarantine) of patients who have tested positive for the disease.  Flaherty Dep. at 57:16-60:20.

Additionally, Dr. Flaherty testified as to the known avenues for transmission of Hepatitis B at dialysis facilities.  Flaherty Dep. at 40:16-41:12, 59:2-60:3.  Dr. Flaherty reported that a dialysis patient can contract the disease through cross-contamination with a diagnosed Hepatitis B patient or through cross-contamination with an unquarantined and previously undiagnosed dialysis patient.  *Id.*  Dr. Flaherty testified that the risk of infection under either avenue is increased by a breakdown in infection control procedures at the hemodialysis facility.  *Id.*

Temporally limiting the Plaintiff's contraction of Hepatitis B to the scientifically determined incubation period for the virus, *see* Flaherty Dep. at 41:18-42:21, Dr. Flaherty proceeded to weigh all of the potential risk factors for contracting Hepatitis B.  Contrary to the Defendant's assertion that Dr. Flaherty "did nothing to rule out other potential exposures," at different points in his deposition testimony, *see* Mem. Supp. Exclude at 10, Dr. Flaherty distinguished multiple risk factors, methodically narrowing the range of potential causes for the Plaintiff's Hepatitis B contraction.  In particular, Dr. Flaherty evaluated and discarded possible factors including Plaintiff

---

[3]For all subsequent references to Dr. Flaherty's deposition, the Court will only refer to the original page numbers of the deposition, and not the page numbers attached by the Court Clerk to the exhibit.

Excell Hardiman's surgery at Methodist Hospital, Flaherty Dep. at 44:2-46:1, his diabetes treatment, Flaherty Dep. at 51:18-52:25, and his lack of exposure to other blood and sexual risk factors, Flaherty Dep. at 56:5-15.  Therefore, Dr. Flaherty considered and ruled out "obvious alternative explanations."  *See* Flaherty Dep. at 56:8-15 ("I don't see any evidence that he had any accidental needle sticks.  I didn't see any blood transfusions during the period in question.  I didn't see any reports of any sexual contacts with hepatis B positive folks and that's–I guess those are the things I would be looking for.").  After considering the Plaintiff's exposure to several known risk factors for Hepatitis B, Dr. Flaherty concluded  that "the far and away strongest risk factor during that period of time [incubation period] was hemodialysis."  Flaherty Dep. at 49:17-19.

Building upon an evidentiary foundation of weighing the Plaintiff's exposure to proven risk factors for contracting Hepatitis B during the incubation period, Dr. Flaherty makes his estimation regarding the probability of Hepatitis B contraction at the Defendant's facility.  Flaherty Dep. at 50:5-10.  *See Porter*, 791 F. Supp. at 1344 (arguing that the basis of an expert's opinion must be founded upon some "data or established paradigm that provides the reasonably reliable reference point for the minor premise and ultimate opinion") (internal quotation omitted).  During the requisite incubation period, Plaintiff Excell Hardiman received dialysis treatment three times a week at the Defendant's Gary facility and additionally underwent four procedures at Methodist Hospital's nephrology unit.[4]  Accordingly, Dr. Flaherty estimated that the potential for the Plaintiff contracting Hepatitis B at the Defendant's facility was mathematically equal to the percentage of hemodialysis treatments he received during the requisite incubation period, which in the Plaintiff's case was ninety-five percent.  *See* Flaherty Dep. at 50:5-10.  When Dr. Flaherty's deposition testimony is

_____

[4]Plaintiffs allege this fact in their Response, *see* Pls.' Expert Resp. at 2, and the Defendant DaVita fails to address and/or dispute it in its Reply.

considered *in toto*, his expert opinion regarding probability of causation is the result of a methodical "process of elimination" based on established scientific evidence of Hepatitis B transmission, and therefore cannot be viewed as a foundation-less guess or conjecture.

Based on the foregoing, Dr. Flaherty's opinion regarding causation cannot be characterized as a "naked" opinion lacking scientific foundation.  On the contrary, it is the direct result of weighing established scientific evidence regarding the transmission of Hepatitis B by a medical expert who is specifically qualified in the field of infectious diseases.  Accordingly, having considered the arguments, and keeping in mind the "considerable leeway" a Court possesses in determining the reliability of an expert, *see Kumho Tire*, 526 U.S. at 152, as well as the "broad latitude" a Court enjoys with respect to its ultimate reliability determination, *Comer v. American Elec. Power*, 63 F. Supp. 2d 927, 933 (N.D. Ind. 1999) (quoting *Kumho Tire*, 526 U.S. at 142 (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 143 (1997)), the Court concludes that Dr. Flaherty's testimony is sufficiently reliable to be admitted.

Finally, the Court notes that the fact that Dr. Flaherty's opinion regarding probability is admissible does not indicate that the opinion is not particularly vulnerable to cross-examination or that it is entitled to great weight.  The strength or weakness of a particular piece of evidence goes to its weight and credibility and not its admissibility.  Proponents of expert testimony "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable... .  The evidentiary requirement of reliability is lower than the merits standard of correctness." Fed.R.Evid. 702 advisory committee notes (2000 Amendments) (quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994).  Rather, the conclusion of whether an

expert is correct in his or her findings lies within the purview of the jury. *See Noblesville Casting Div. Of TRW, Inc. v. Prince*, 438 N.E.2d 722, 731 (Ind. 1982) ("The degree of certainty in which an opinion or conclusion is expressed concerns the weight to be accorded the testimony, which is a matter for the jury to resolve").

    *3.     Dr. Flaherty's qualifications to testify regarding damages*

    In its Motion to Exclude, Defendant Davita argues that Dr. Flaherty is not qualified to testify regarding the medical effects of Hepatitis B and any possible correlation to chronic liver damage. In support, Defendant relies on Dr. Flaherty's own deposition testimony, in which he indicated that as to Plaintiffs' claimed damages he would defer to a hepatologist.[5]  In response, Plaintiffs argue that Dr. Flaherty is a qualified expert in the scientific disciplines of internal medicine and infectious

---

[5]In particular, Defendant DaVita disputes the following passages from Dr. Flaherty's deposition testimony:

> Q:    In regard to how the liver may be affected by hepatitis B virus or cirrhosis would you be inclined to defer to a hepatologist as to determine the ultimate effects it might have on a patient?
>
> A:    Yes.
>
> Q:    Would you also defer to a hepatologist in regard to determining what medications a person might use to treat cirrhosis of the liver?
>
> A:    Yes.
>
> Q:    In regard to the hepatitis B virus itself, is that something that you have prescribed medication for or would you defer to a hepatologist for somebody just having hepatitis B?
>
> A:    Again, I typically in my practice right now, I don't take care of people that have hepatitis B virus alone.  I do take care of people that have hepatitis B virus and HIV co-infection because it's–it's–we actually use the same drugs.  So it works out great, we use–pick drugs that work against HBV and HIV together.  But typically patients–given the sort of interest and the referral patterns in our current situation, patients with hepatitis B virus infection alone would go to hepatologist therapist.
> ...
> Q:    I think you told Mr. Varner that you don't think Mr. Hardiman, given his other ailments, is a candidate for Interferon?
>
> A:    I think it would be tough–it would be a tough treatment regimen for him to go through.  I would–frankly, I would defer on that kind of choice to a hepatologist.

(Flaherty Dep. at 104-05, 139)

diseases, and that, regardless, Dr. Flaherty's opinions regarding the medical effects of hepatitis and chronic liver damage are "so mundane [that] it defies reason that the Defendant is asking the Court to exclude this testimony." Pls.' Expert Resp. at 2.[6]  In Reply, the Defendant argues that if Dr. Flaherty's opinion as to the effects of Hepatitis B virus on the liver is "so mundane", it is inadmissible as expert testimony because it does not assist the trier of fact as it is equivalent to lay testimony.

Based on the Defendant's opening Memorandum and Reply, the Court construes the Defendant's Motion as proposing two arguments here: (1) Dr. Flaherty lacks the qualifications to testify regarding the possible effects of and damages stemming from Hepatitis B; and (2) Dr. Flaherty's statements regarding effects from Hepatitis B do not assist the jury.

a.      *Qualifications*

Under Rule 702, an expert must be qualified in the relevant field "by knowledge, skill, experience, training, or education ... ."  Fed.R.Evid. 702.

Here, the Defendant does not specifically challenge Dr. Flaherty's qualifications, credentials, or curriculum vitae as lacking in the field of internal medicine and infectious diseases.  On the contrary, the Defendant's argument merely relies on Dr. Flaherty's own deposition testimony, in which he states that he would defer to a hepatologist on certain issues.  In other words, Defendant argues that Dr. Flaherty admitted or conceded that he lacks qualifications in order to testify on the issue of claimed damages resulting from Hepatitis B.

---

[6]The Court notes that, in Plaintiffs' Response, they raise statements from Dr. Flaherty's expert report which are similar in nature and context to the deposition testimony specifically disputed by the Defendant in his Motion.  In particular, Plaintiffs argue that the following passage regarding the effects of and claimed damages stemming from Hepatitis B are "mundane" and cannot be rebutted: "Although persons with chronic hepatitis B virus infection are often asymptomatic, chronic liver disease develops in two thirds of these persons, and approximately 15%-25% die prematurely from cirrhosis or liver cancer."  Pls.' Expert Resp. at 2.

Based on his curriculum vitae, Dr. Flaherty is specially qualified in the scientific disciplines of internal medicine and infectious diseases.[7]  Thus, to the extent that Dr. Flaherty's testimony is within the bounds of his specialized training, it is admissible subject, of course, to the additional considerations of reliability.

Moreover, while Dr. Flaherty stated that he would "defer" to a hepatologist with regard to particular facts regarding the treatment and pathology of Hepatitis B, it is not, as the Defendant suggests, a "concession" by Dr. Flaherty that he is unqualified to testify regarding the effects of Plaintiff's injuries and/or claimed damages *in toto*.  Although it may be the case that Dr. Flaherty is not qualified to offer certain types of testimony because it is outside the scope of his expertise, it is impossible to narrowly proscribe Dr. Flaherty's testimony at this time.[8]  Thus, the Defendant's request is premature.  Because the testimony sought to be excluded is best evaluated on a more narrow basis, it appears that the most appropriate remedy for proscribing improper testimony is through timely objections at trial.

b.      *"Mundane"*[9]

Next, in reaction to Plaintiffs' characterization (in their Response) of Dr. Flaherty's opinion as "mundane", Defendant DaVita argues that his opinion fails to meet the requirements of Rule 702 because it does not assist the trier of fact.

---

[7]The Court declines to list Dr. Flaherty's entire curriculum vitae again here; instead, the Court notes that the Defendant does not challenge Dr. Flaherty's experience and/or qualifications, and thus they are not in dispute here.

[8]Additionally, the Plaintiff notes in his Response that Dr. Flaherty did not have the results of the Plaintiff's liver biopsy at the time of his deposition.  It remains to be determined what effect this additional evidence would have on Dr. Flaherty's ability to make an opinion, within his expert training and experience, regarding the specific effects of the Hepatitis B virus in the Plaintiff's case.

[9]Mundane means: (1) of or pertaining to this world of earth as contrasted with heaven; worldly; earthly; (2) common; ordinary; banal; unimaginative; and/or (3) pertaining to the world, universe, or earth.  *See* http://dictionary.reference.com/browse/mundane.

Contrary to the Defendant's argument, the Court finds that the Plaintiffs' description of Dr. Flaherty's statement as "mundane" is not equivalent to an admission that his statement would not assist the trier of fact and qualifies as a lay opinion.  Rather, the Court finds that the use of the word "mundane" refers to an assumption that a medical expert, specially trained in internal medicine and infectious diseases, is qualified to state medical opinions that are generally accepted by the medical community, i.e., medical opinions that are "mundane" or ordinary to one who possesses Dr. Flaherty's specific expertise.

Furthermore, to the extent that Dr. Flaherty, an expert witness specially trained in internal medicine and infectious diseases, makes opinions based on evidence that is generally agreed upon in the medical community, they are admissible.  Ultimately, the object of the court's Rule 702 reliability inquiry is to ensure that the opinions expressed by testifying experts "adhere to the same standards of intellectual rigor that are demanded in their professional work." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).  Thus, an expert may rely only on evidence on which a reasonable expert in the field would rely. *Porter*, 791 F. Supp. at 1343 (citing *U.S. v. Lundy*, 809 F.2d 392, 395 (7th Cir.1987).  In general, for facts and data to be of a type reasonably relied upon by experts to form an opinion, there must be a connection between the currently-observed facts and some known scientific paradigm. *Porter*, 791 F. Supp. at 1343.  The challenged statement in the immediate case rests comfortably within these boundaries.  Because Dr. Flaherty's statement is grounded in a "known scientific paradigm" (knowledge of chronic Hepatitis B that is generally accepted and understood by the medical community), it is the type of evidence that a reasonable expert would rely upon.

4.    *Conclusion*

16

Based on the foregoing, the Court denies the Motion to Exclude Testimony of Plaintiffs' Expert, John Flaherty, M.D.

**B.      Motion to Strike**

In its Motion to Strike, Defendant requests that the Court strike certain passages as inadmissible hearsay from Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment.

"A party who wishes to argue that portions of a statement of genuine issues contain errors or are inadmissible on evidentiary grounds may file a motion to strike those portions of the statement of genuine issues." *Mayes v. City of Hammond, IN*, 442 F.Supp.2d 587, 596 (N.D. Ind. 2006) (citing *Goltz v. University of Notre Dame du Lac*, 177 F.R.D. 638, 640 (N.D. Ind. 1997).  However, "it is the function of a court, with or without a motion to strike, to review carefully both statements of material facts and statements of genuine issues and the headings contained therein and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement." *Id.*

Pursuant to Federal Rule of Evidence 802, the Defendant asks the Court to strike the following statement and source reference as inadmissible hearsay:

> Most dialysis centers only test for HBsAG. The HBV-DNA test is much more sensitive. A recent study found that the prevalence of occult HBV in adult hemodialysis patients is four to five times higher than standard HBsAG testing would suggest.
> [Footnote] 1[:]  **Occult Hepatitis B virus infection in a North American Adult Hemodialysis Patient Population**, Gerald Y. Minuk, Doug Fenf Sun, Rebecca Greenberg, Manna Zhang, Kimberly Hawkins, Julia Uhanova, Adam Gutkin, Kevin Bernstein, Antonio Giulivi and Carla Osiowy, **Hepatology**; November 2004.

17

Mot. Strike Inadmissible Evid. From Pls.' Resp. Def.'s Mot. Partial Summ. J. at 1 (quoting Pls.'

Resp. Summ. J. at 5) (first and second emphases in original).

The Plaintiffs failed to respond to Defendant's Motion to Strike.  Local Rule 7.1(a) states:

"Failure to file a response or reply within the time prescribed [by the Rules] may subject the motion

to summary ruling."  N.D. Ind. L.R. 7.1(a).  The Court notes that the Plaintiffs filed a Response to

Defendant's Motion to Exclude on March 1, 2007, after the Defendant filed its Motion to Strike.

However, the Plaintiffs did not address Defendant's Motion to Strike in either that response or in

a separate response.  Therefore, Defendant's Motion to Strike may be granted summarily according

to Local Rule 7.1(a).  *See Officer v. Chase Insurance Life & Annuity Co.*, No. 4:06-CV-00127, 2007

WL 781928, at *3 (N.D. Ind. March 13, 2007).

The Court finds that the statement in dispute is a hearsay statement pursuant to Rule 801(c)

and that it has not been established that a hearsay exception applies under Rule 803.  Therefore, the

Court grants the Defendant's Motion to Strike.


C.      **Motion for Summary Judgment**

In its Motion for Summary Judgment, the Defendant argues that it is entitled to partial

summary judgment on Plaintiff Excell Hardiman's claim that he contracted Hepatitis B at the

Defendant's dialysis facility.   In response, the Plaintiffs submit numerous pages of deposition

testimony to support the element of causation and ask the court to find that there are issues of

material fact such that summary judgment is inappropriate.

As a threshold matter, and before delving into the substance of Defendant's argument, the Court finds it necessary to frame the scope of the Defendant's Motion. The Court notes that, from the Defendant's opening Motion and supporting Memorandum through its Reply, it is unclear which negligence elements the Defendant is challenging. For example, in its opening Motion, the Defendant frames the issue in this way: Defendant DaVita "moves the Court for partial summary judgment on plaintiffs' claims related to plaintiff, Excell Hardiman's *contraction* of hepatitis B allegedly at the DaVita facilities." Mot. Partial Summ. J. at 1 (emphasis added). Nowhere in the Defendant's Motion or subsequent memoranda does the Defendant clarify the specific negligence elements being challenged through its use of the word "contraction." However, in its opening Memorandum, the Defendant relied exclusively on case law relevant to the issue of proximate cause and the thrust of the Defendant's substantive argument (Plaintiffs' reliance on expert testimony of probability) attempts to undermine a causal link between Plaintiff Excell Hardiman's contraction of Hepatitis B and Defendant's facility. *See* Mem. Supp. Def.'s Mot. Partial Summ. J. at 8-9. The cited case law and the substance of the Defendant's argument leads the Court (and presumably the Plaintiffs) to surmise that Defendant's Motion only challenges causation.

However, at the end of its opening Memorandum in Support, Defendant makes reference to breach of duty. But, in the Court's view, the Defendant's argument with respect to breach (to the extent it makes one) is not wholly clear. The Defendant's breach argument amounts to a vague reference which merely reiterates its previous argument regarding improper reliance on probability testimony to establish causation. *See* Mem. Supp. Def.'s Mot. Partial Summ. J. at 9 ("There is absolutely no evidence of any act or omission which would cause Hardiman to contract hepatitis B at the DaVita facility. Plaintiff's expert opinion is based solely on a percentage analysis in which

he opines that [Plaintiff Excell] Hardiman contracted the disease at DaVita because the majority of his dialysis treatments were conducted at DaVita.  This type of analysis is nothing more than guess, conjecture, surmise, possibility, or speculation and is not sufficient to withstand a motion for summary judgment.").

Furthermore, throughout its opening Memorandum in Support, the Defendant fails to specify the elements of negligence that it challenges.  In fact, it is not until the conclusion of its Reply that the Defendant explicitly clarifies the issue:  "However, there is no genuine issue of material fact regarding plaintiffs' claim that Hardiman contracted the disease at the DaVita-Gary facility through DaVita's negligence and/or breach of the appropriate standard of care.  That is the issue upon which DaVita moved for partial summary judgment."  *See* Def.'s Reply Pls.' Resp. Def.'s Mot. Partial Summ. J. at 5-6.  Being in its Reply, this statement comes *after* the Plaintiffs' Response and thus Plaintiffs did not (and more importantly, had no reasonable opportunity to) respond to the particular element of breach of duty.  Moreover, despite the Defendant's conclusory statement, neither the Defendant nor the Plaintiffs have provided any specific evidence and/or case law, supporting and/or contradicting, an argument of breach of duty.

In conclusion, while it is not clear from the Defendant's Motion for Partial Summary Judgment and supporting memoranda which negligence elements it attacks (i.e., duty, breach, and/or causation), it is apparent to the Court that the Defendant, at the very least, challenges causation. Further, because the Defendant's Motion for Partial Summary Judgment and supporting memoranda lack clarity in terms of defining the specific elements of negligence being raised and challenged, particularly with regard to the element of breach, the Plaintiff lacked notice and an opportunity to respond to that element.  Such confusion is only exacerbated by the nature of a motion for *partial*

summary judgment, which suggests that the non-moving party is being asked to respond and defend fewer elements than those presented in its initial Complaint.  Accordingly, the Court considers the Defendant's Motion for Partial Summary Judgment to be limited to the issue of causation and will address it as such.

## STANDARD

While the standard for summary judgment is well-settled, the standard merits repeating here in order to emphasize its significance in adjudicating a case such as the one at bar.  The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law.  In other words, the record must reveal that no reasonable jury could find for the non-moving party."  *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The moving

party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the
district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at
325. When the non-moving party would have the burden of proof at trial, the moving party is not
required to support its motion with affidavits or other similar materials negating the opponent's
claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994);
*Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the
moving party, if it chooses, may support its motion for summary judgment with affidavits or other
materials and thereby shift to the non-moving party the burden of showing that an issue of material
fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548,
558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party
cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed.
R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e)
establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule,
must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the
non-moving party must do more than raise some metaphysical doubt as to the material facts; the
non-moving party must come forward with specific facts showing that there is a genuine issue for
trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all
facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor
of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role

22

is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine

the truth of the matter, but instead to determine whether there is a genuine issue of triable fact.

*Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

Finally, moving away from the general standard and as to the particular facts of this case,

the Court notes that "[s]ummary judgment is rarely appropriate in negligence cases because issues

of causation and reasonable care are more appropriately left for determination by the trier of fact."

*Cincinnati Ins. Co. v. Davis*, 860 N.E.2d 915, 922 (Ind. Ct. App. 2007) (citing *Zubrenic v. Dunes*

*Valley Mobile Home Park, Inc.*, 797 N.E.2d 802, 805 (Ind. Ct. App. 2003).  The Federal Rules of

Civil Procedure and the Federal Rules of Evidence determine the qualities of evidence properly

considered in resolving a motion for summary judgment.  *Porter v. Whitehall Labs, Inc.*, 791 F.

Supp. 1335, 1346 (S.D. Ind. 1992).  In a case heard under diversity jurisdiction, the substantive law

governing the case, including the placement of burdens of proof or production and the evidentiary

standard required for each element of a claim, is determined by state law.  *Id.* (citing *Erie R.R. v.*

*Tompkins*, 304 U.S. 64 (1938)).  In the instant case, the Court has diversity jurisdiction over this

action and thus the controlling substantive law comes from the forum state of Indiana, the situs of

the alleged wrongful conduct and injury.  *Id.*  "Indiana law places on the claimant the burden of

proving every element of a prima facie case, including the fact of causation."  *Id.*

## FACTUAL BACKGROUND

In considering a motion for summary judgment, the Court does not try to determine the

credibility of conflicting evidence. Instead, the court must consider all evidence in the light

reasonably most favorable to the non-moving parties, giving them the benefit of conflicts in the

evidence and any favorable and reasonable inferences that could be drawn from the evidence. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Construing the evidence accordingly, the Court assumes the following facts, viewed in the light most favorable to the Plaintiffs as the nonmoving parties, to be true for purposes of Defendant's Motion for Partial Summary Judgment. *See Henderson v. Freightliner*, LLC, No. 1:02-CV-01301DFH-WTL, 2005 WL 775929, *1 (S.D. Ind. Mar., 24, 2005).[10]

On or about November 18, 2002, Plaintiff Excell Hardiman began a course of dialysis treatments at Defendant's facilty in Gary, Indiana and received dialysis at the Davita facility approximately three (3) times a week.  In accordance with the recommendations of the Center for Disease Control, Defendant Davita's procedures require that it immunize all dialysis patients against contracting Hepatitis and that it quarantine from other dialysis patients those patients who test positive for Hepatitis.  On or about November 18, 2002, Mr. Hardiman signed a consent form to be vaccinated against Hepatitis B.

On or about November 6, 2004, Mr. Hardiman tested positive for Hepatitis B.  On or about November 12, 2004, Defendant Davita informed Plaintiff Excell Hardiman that he had tested positive for Hepatitis B and that he had not been vaccinated against the disease.  Further, Plaintiff Excell Hardiman was not immediately quarantined by the Defendant.

---

[10] In its Reply, the Defendant argues that the Plaintiff's failure to dispute any of the facts listed in his Memorandum in Support of Partial Summary Judgment automatically renders those facts admitted without controversy. *See* Def.'s Reply Pls.' Resp. Def.'s Mot. Part. Summ. J. at 2 ("Def.'s Reply").  However, the Defendant's interpretation of Local Rule 56.1(b) is insufficient, as the Rule only deems such evidence admitted without controversy subject to the exceptions, i.e., "that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file."  N.D. Ind. L.R. 56.1.  Here, the Plaintiff has submitted evidence in the form of depositions and affidavits which create controversy as to the facts raised by the Defendant.  *See generally* Pls.' Designated Materials Resp. Def.'s Mot. Partial Summ. J., Exs. A-G.

Dr. Flaherty, an expert witness in the areas of internal medicine and infectious diseases, testified that the likely time period for Plaintiff Excell Hardiman's infection occurred between April of 2004 and September of 2004, given the known incubation period for Hepatitis B to be 45-100 days.  During that time period, Plaintiff Excell Hardiman continued receiving dialysis treatment three times a week at the Defendant's facility and additionally underwent four procedures at Methodist Hospital's nephrology unit.

Dr. Flaherty testified that dialysis patients have an increased risk of Hepatitis B infection, given the ease of transmission and highly contagious nature of the disease.  Dr. Flaherty  reported that "[u]nvaccinated persons undergoing hemodialysis have an eight (8) to ten (10) fold increased risk of hepatitis B virus infection."  Flaherty Dep. at 59:2-10.  Dr. Flaherty additionally testified regarding the numerous ways in which a patient can contract Hepatitis B while undergoing hemodialysis treatment.  Dr. Flaherty reported that a dialysis patient can contract the disease through cross-contamination with a diagnosed Hepatitis B patient.  Another avenue of contraction is cross-contamination with an unquarantined and previously undiagnosed dialysis patient.  Dr. Flaherty testified that the risk of infection under either avenue is increased by a breakdown in infection control procedures at the hemodialysis facility.

## ANALYSIS

In order to recover under a theory of negligence, a plaintiff must show (1) that a duty of care was owed to the Plaintiff, (2) that the Defendant breached that duty, and (3) that the breach proximately caused the Plaintiff's damages.  *Estate of Cullop v. State*, 821 N.E.2d 403, 407 (Ind. Ct. App. 2005) (citing *Sizemore v. Templeton*, 724 N.E.2d 647, 650 (Ind. Ct. App. 2000)); *Topp v. Leffers*, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005) (citing *Kincade v. MAC Corp.*, 773 N.E.2d 909,

911 (Ind. Ct. App. 2002)).   "An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered." *Topp*, 838 N.E.2d at 1032 (citing *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994)).   A legal cause-in-fact is "that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produced the result complained of and without which the result would not have occurred." *Porter*, 791 F.Supp. at 1341 (S.D. Ind. 1992) (quoting *Ortho Pharmaceutical Corp. v. Chapman*, 388 N.E.2d 541, 555 (Ind. Ct. App. 1979)).   "The element of causation requires that the harm would not have occurred but for the defendant's conduct." *Topp*, 838 N.E.2d at 1032 (citing *City of East Chicago v. Litera*, 692 N.E.2d 898, 901 (Ind. Ct. App. 1998)).   Under Indiana law, the evidentiary standard required to establish the fact of causation in this matter is by a preponderance of the evidence.   *Porter*, 791 F.Supp. at 1341; *City of Indianapolis v. Parker*, 427 N.E.2d 456 (Ind. Ct. App. 1981).

In opposition to partial summary judgment, Plaintiffs submitted expert testimony of Dr. Flaherty who estimated, based on the number of dialysis treatments undertaken at the Defendant's facility during the likely infection period (as measured by the known incubation period for Hepatitis B), that there is a ninety-five percent (95%) probability that Plaintiff Excell Hardiman contracted Hepatitis B at the Defendant's facility.   The apparent thrust of the Defendant's motion is that the Plaintiffs' reliance on expert testimony to prove proximate causation is insufficient to withstand summary judgment because the opinion of the Plaintiff's expert is based solely on percentage analysis and is "nothing more than guess, conjecture, surmise, possibility, or speculation." Mem. Supp. Def.'s Mot. Partial Summ. J. at 9.   Additionally, the Defendant argues that such testimony is

inadmissible under the Federal Rules of Evidence and the *Daubert* standard.[11]  *Id.* (citing *Daubert*, 509 U.S. 579 (1993)).

Here, the Court notes that expert testimony is not only helpful but necessary because "when the issue of proximate cause is not within the understanding of lay persons, testimony of an expert witness on the issue is necessary."  *Porter*, 791 F.Supp. at 1342 (citing *Watson v. Medical Emergency Services, Corp.*, 532 N.E.2d 1191, 1194 (Ind. Ct. App. 1989); *Yaney v. McCray Memorial Hosp.*, 496 N.E.2d 135, (Ind. Ct. App. 1986)).  "Expert testimony seeks to provide the jury with a sufficient basis to make a reasonable finding on the issue of causation."  *Id.*  Because the Court has already ruled that Dr. Flaherty's expert opinion is sufficiently reliable to be admitted under Rule 702 and *Daubert*, the question is whether that testimony provides a minimally sufficient basis from which a reasonable juror could find that Plaintiff Excell Hardiman contracted Hepatitis B at Defendant's facility.  Stated differently, couched in terms of causation, this Court must determine whether it is more likely than not that Plaintiff Excell Hardiman's contraction of Hepatitis B would not have occurred but for his receiving dialysis treatment at the Defendant's facility.

"Rule 56 of the Federal Rules of Civil Procedure governs the types of evidence a court may consider in ruling on a motion for summary judgment."  *Porter*, 791 F. Supp. at 1342.  In this matter, the Plaintiffs have submitted expert testimony in the form of a deposition, which may be considered in resolving Defendant's Motions.  *Cf. Id.* (citing Fed. R. Civ. P. 56(c)).

"[E]xpert medical opinion couched in terms less than that of a reasonable degree of medical certainty[,] such as 'possible,' 'probable,' or 'reasonably certain,' are admissible and do have probative value."  *Topp*, 838 N.E.2d at 1033 (quotation omitted); *see also Longardner v. Citizens*

---

[11]  *See generally supra*, Court's discussion of the Defendant's Motion to Exclude Testimony of Plaintiffs' Expert, John Flaherty, M.D.

*Gas and Coke Util.*, No. 49A02–511-CV-1029, 2006 WL 3230303, at *5 (Ind. Ct. App. Nov. 8, 2006) (unpublished disposition); *Ind. Mich. Power Co. v. Runge*, 717 N.E.2d 216, 234 (Ind. Ct. App. 1999); *Herman v. Ferrell*, 276 N.E.2d 858 (Ind. Ct. App. 1971).  Indiana courts have "rejected the notion that the admissibility and probative value of expert testimony turns on the particular form of words and degree of certainty in which it is expressed."  *Longardner*, 2006 WL 3230303, at *6 (quoting *Noblesville Casting Div. of TRW, Inc. v. Prince*, 438 N.E.2d 722, 728-29 (Ind. 1982); *see also Sentilles v. Inter-Carribbean Shipping Corp.*, 361 U.S. 107, 109 (1959) ("The matter does not turn on the use of a particular form of words by the physicians in giving their testimony"); *U.S. v. Cyphers*, 553 F.2d 1064, 1072 (7th Cir. 1977) (rejecting requirement that an expert's opinion testimony be stated in terms of "reasonable scientific certainty").

However, medical testimony establishing a mere possibility of causal connection, standing alone and unsupported by other evidence, is not sufficient to support a verdict.  *Topp*, 838 N.E.2d at 1033; *Walker v. Cuppett*, 808 N.E.2d 85, 95 (Ind. Ct. App. 2004); *Runge*, 717 N.E.2d 216, 234 (Ind. Ct. App. 1999); *Daub*, 629 N.E.2d at 877 (Ind. Ct. App. 1994); *Porter*, 791 F. Supp. at 1346.  "A plaintiff's burden of proof may not be carried with evidence based upon mere supposition or speculation." *Longardner*, 2006 WL 3230303, at *5; *Topp*, 838 N.E.2d at 1933 (Ind. Ct. App. 2005); *Runge*, 717 N.E.2d at 234; *Daub*, 629 N.E.2d at 877; *Jastremski v. U.S.*, 737 F.2d 666, 671 (Ind. Ct. App. 1994) ("[a] finding of proximate cause may not be based on speculation or conjecture"); *Porter*, 791 F. Supp. at 1346.  The rule is intended to prevent an improper award of damages "predicated purely on speculation." *Porter*, 791 F. Supp. at 1346 (citing *Noblesville Casting Div. of TRW, Inc.  v. Prince*, 438 N.E.2d 722, 731 (Ind. 1982)).

On the other hand, "an expert's opinion that something is 'possible' or 'could have been' may be sufficient to sustain a verdict or award when rendered in conjunction with other, probative evidence establishing the material factual question to be proved." *Topp*, 838 N.E.2d at 1035 (quoting *Noblesville*, 438 N.E.2d at 731); *Runge*, 717 N.E.2d at 235 n.16; *Walker*, 808 N.E.2d at 95. Thus, admissible medical expert testimony must only be "more conclusive than 'possibility' " when it stands alone as proof of proximate causation. *Longardner*, 2006 WL 3230303, at *7. Further, to withstand a motion for summary judgment, medical expert testimony regarding proximate causation need only create a genuine issue of material fact; it is not required that such evidence be sufficient to support a verdict as a matter of law. *Id.* at *5-7 (distinguishing *Topp* based on the different evidentiary standards required in a motion for summary judgment and a motion for a directed verdict); *see also Cincinnati Ins. Co.*, 860 N.E.2d at 922 ("[s]ummary judgment is rarely appropriate in negligence cases because issues of causation and reasonable care are more appropriately left for determination by the trier of fact.").

Here, the Court finds that Dr. Flaherty's expert testimony regarding the probability of Hepatitis B contraction at the Defendant's facility is based on more than mere speculation. On the contrary, the Court finds that Dr. Flaherty supports his expert opinion with known scientific methodologies, and based on that evidence, he proposes that there is a ninety-five percent chance that Plaintiff Excell Hardiman contracted Hepatitis B at Defendant's facility.

To begin, Dr. Flaherty relied on the known incubation period for Hepatitis B (45-100 days) to estimate the likely time period of the Plaintiff's infection, placing it between April and September of 2004. Next, by considering the Plaintiff's exposure to known risk factors for contracting Hepatitis B during the incubation period, Dr. Flaherty narrowed the possible sources of the

Plaintiff's infection.  Dr. Flaherty then testified that dialysis patients have an increased risk of Hepatitis B infection, given the ease of transmission and highly contagious nature of the disease.[12] Relying on the Plaintiff's significant exposure to this increased risk and ruling out other potential risk factors for infection (such as the Plaintiff's surgery at Methodist Hospital, the Plaintiff's diabetes treatment, and the Plaintiff's lack of exposure to other blood and sexual risk factors), Dr. Flaherty concluded that "the far and away greatest risk factor during that time period was hemodialysis."

Relying on all of these factors, Dr. Flaherty estimated that the potential for the Plaintiff having contracted Hepatitis B at the Defendant's facility is mathematically equal to the percentage of hemodialysis treatments he received during the requisite incubation period, which in the Plaintiff's case was ninety-five percent.  Having drawn upon the best available scientific knowledge regarding the spread of Hepatitis B among hemodialysis patients and methodically narrowing the Plaintiff's exposure to the other known risk factors for infection during the requisite incubation period, Dr. Flaherty's estimation of probable infection from the Defendant's hemodialysis facility cannot be said to stand alone.

---

[12]  Discussing the highly contagious nature of Hepatitis, Dr. Flaherty testified that there was a high risk of infection at hemodialysis facilities, even without a breakdown in quality controls.  Dr. Flaherty testified that:

> Even though people wear gloves, even though surfaces are cleaned down, even though, you know, universal precautions are - may be adhered to relatively well, the fact is that if anyone with hepatitis B is in that environment then some hepatitis B virus gets into the environment, too.  And so then when healthcare workers who have - you know, have manipulated things in the environment then are handling the needles, the connectors, you know, the tools are used, I mean, some of that virus can get into the - basically into the line, into the path that the blood has taken then somebody gets Hepatitis B.

Flaherty Dep. at 40:24-41:12.

In further support of his expert opinion, Dr. Flaherty testified regarding numerous causation theories, bolstering the conclusions that the Plaintiff has not relied solely on evidence of probability. *See Porter*, 791 F. Supp. at 1341 ("The first step in determining whether one event caused another is to develop a theory explaining the causal relationship between the two").  To begin, the Plaintiff offers evidence that he could have been infected at the Defendant's facility through cross-contamination with a previously undiagnosed Hepatitis B patient.  Dr. Flaherty testified that a hemodialysis patient with early stage Hepatitis B may not manifest symptoms of Hepatitis B surface antigen and may therefore go undetected for some time.  Dr. Flaherty argues that if this patient is not quarantined according to CDC procedures because their infection remains undiagnosed, then the risk of infection to other hemodialysis patients increases.

Similarly, Dr. Flaherty noted that a hemodialysis patient may also be infected through blood contact with someone with "occult" Hepatitis.  Dr. Flaherty explained that, similar to a patient with early stage Hepatitis B, a patient with "occult" Hepatitis B may escape detection under a Hepatitis B antigen test, testing negative for HBV surface antigen while manifesting HBV-DNA in their bloodstream.  Although Dr. Flaherty acknowledged that the rate of infection from occult Hepatitis patients at hemodialysis facilities is unknown due to a lack of scientific study in the area, he declined to rule it out as a possible means of transmission.

The Plaintiff also offered evidence that he could have contracted hepatitis at the Defendant's facility through cross-contamination with a diagnosed Hepatitis B patient, particularly if there was a breakdown in infection control procedures, such as a failure to quarantine diagnosed hepatitis B patients.  To bolster this theory of causation, the Plaintiff offers circumstantial evidence to inferentially suggest that a greater breakdown of infection control procedures may have taken place

31

at the Defendant's facility.  Specifically, the Plaintiff offered evidence that the Defendant's facility failed to quarantine him immediately after learning of his Hepatitis B diagnosis, suggesting, by way of inference, that the Defendant may have failed (on previous occasions) to quarantine other diagnosed patients and thus exposing him to a greater risk of infection.  The Plaintiff also offered evidence that the Defendant's facility failed to vaccinate him according to standard company procedures, circumstantially establishing that a breakdown of infection control procedures has taken place at the Defendant's facility.[13]  Flaherty Dep. at 57:16-60:3.

Based on the foregoing, the Court finds that Dr. Flaherty's expert opinion offers more than mere speculation.  Not only is the expert's own statement of probability supported by evidence, including the known incubation period of Hepatitis B and the weighing of potential risk factors, but the Plaintiff has also provided testimony regarding other possible causation theories and has supported them through circumstantial evidence relevant to the immediate case.

To overcome the Defendant's motion for summary judgment, the Plaintiff need only establish an issue of material fact and need not submit evidence that is sufficient to support a verdict. *See Longardner*, 2006 WL 3230303, at *5-7.  The Court finds that a genuine issue of material fact exists as to whether Plaintiff Excell Hardiman contracted Hepatitis B at the Defendant's facility.  Whether or not the Plaintiffs' evidence is sufficient to support a verdict is a question best left for a

---

[13] In its Reply brief, the Defendant argues that Plaintiffs' evidence regarding its failure to vaccinate him is not relevant to the issue of causation because the Defendant does not dispute that an issue of material fact exists as to that issue.  *See* Def.'s Reply Pls.' Resp. Def.'s Mot. Partial Summ. J. at 5.  The Defendant is incorrect in this argument, however, as the evidence is relevant to the instant motion.  Evidence regarding the Defendant's failure to follow standard vaccination procedures toward the Plaintiff, creates a circumstantial inference that the Defendant facility may have also failed to follow other infection control procedures, any of which may have proximately caused the Plaintiff's injury.  Additionally, at least in theory, the Plaintiff could argue that the Defendant's failure to follow standard vaccination procedure was a breach of duty that, by itself, proximately caused the Plaintiff's infection.  Hypothetically, for instance, the Plaintiff could argue that because of the highly contagious nature of the Hepatitis virus and the high rate of disease transmission at hemodialysis facilities, vaccination was the *only* way to protect him against the disease.  In either case, it is clear that the Plaintiff's use of this evidence is useful for supporting an argument of causation and is therefore relevant to the instant motion.

jury to determine. *See Cincinnati Ins. Co.*, 860 N.E.2d at 922 ("[s]ummary judgment is rarely appropriate in negligence cases because issues of causation and reasonable care are more appropriately left for determination by the trier of fact.").

## CONCLUSION

Based on the foregoing, the Court hereby **DENIES** the Motion for Partial Summary Judgment [DE 40], **GRANTS** the Motion to Strike Inadmissible Evidence from Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment [DE 45], and **DENIES** the Motion to Exclude Testimony of Plaintiffs' Expert, John Flaherty, M.D. [DE 46].

SO ORDERED this 10th day of May, 2007.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:    All counsel of record